**IN THE COURT OF APPEALS OF IOWA**

No. 19-0721
Filed July 3, 2019

**IN THE INTEREST OF J.S.,**
**Minor Child,**

**J.S., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, District Associate Judge.

A father appeals the termination of his parental rights to his minor child. **AFFIRMED.**

T. Cody Farrens of Farrens Law Firm, P.L.L.C., Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Tricia DeHarty, Sioux City, guardian ad litem for minor child.

Marchelle M. Denker of Juvenile Law Center, Sioux City, attorney for minor child.

Considered by Doyle, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A father appeals the termination of his parental rights to his minor child, born in 2014. He contends the State failed to make reasonable efforts at reunification, challenges the sufficiency of the evidence underlying the statutory grounds for termination cited by the juvenile court, and argues termination is not in the child's best interests.

## I. Background Facts and Proceedings

The child came to the attention of the Iowa Department of Human Services (DHS) in September 2017 as a result of supervision concerns regarding the mother.[1] The child was removed from the mother's care. At this time, the mother and child lived in Sioux City, and the father lived in Des Moines. The father had little involvement in the child's life up to this point. In October, the father filed a "motion for visitation," in which he argued "the lack of in-person visitation is preventing reasonable efforts toward [his] reunification with" the child. Attached to the motion was a letter the father's counsel sent to DHS three days earlier requesting visitation with the child in Sioux City and advisement of any concerns for his ability to ultimately have the child placed with him so he could address those concerns. The court ordered the motion to be considered at the time of the adjudication hearing in December. Meanwhile, DHS set up a visitation for the father in November, which the father attended.

Also in November, the father filed a "motion for home study," requesting that his home be inspected and considered as a potential placement for the child. The

---

[1] DHS was involved with the family on prior occasions.

court likewise ordered this motion to be considered at the time of the adjudication hearing. Shortly thereafter, DHS sent the father forms to complete to initiate a home study. In the accompanying letter, DHS stated, "If you continue to seek placement of [the child] please fill it out and send [it] back to me so the study can be completed." Ultimately, the father did not return the paperwork until the end of June 2018.

Prior to the adjudication hearing, the father's counsel moved to withdraw, citing a breakdown in the attorney-client relationship. At the adjudication hearing, for which the father did not appear, the court granted the motion to withdraw and counsel's additional request that consideration of the father's motions for visitation and a home study be continued to the dispositional hearing in February 2018, if the father still wished to pursue them. The court adjudicated the child to be in need of assistance (CINA), confirmed the need for removal, and ordered continued placement in foster care, where the child was thriving. The court ordered that any visitation between the child and parents be left to the discretion of DHS and the child's attorney and guardian ad litem (GAL). The court also directed the father to communicate with DHS "to make his intentions known" and complete his social history form and return it to DHS. The father did not comply with either directive in the coming months.

The father was unable to attend the dispositional hearing in February due to "inclement weather." Over objections by the State and GAL, the court ordered a continuance to allow the father to be personally present at the hearing. The hearing was rescheduled for roughly two weeks later. The father appeared

telephonically at that hearing. According to the dispositional order,[2] the father agreed with the recommendations contained in the DHS case plan, which recommended custody of the child remain with DHS for placement in foster care and visitation be at the discretion of DHS, the child's attorney, and the GAL.[3] The court incorporated these recommendations into its dispositional order and additionally granted the father's motion for a home study. However, the father "reported to the court that he was waiting to secure a new apartment prior to moving forward with a home study." The court noted in its order that the father had not visited the child since November of 2017 and had no contact with DHS. The court again ordered the father to contact DHS to make his intentions known, participate in visitation, and participate in a home study. The court also ordered the father to notify DHS in writing of any services he believed to be necessary.

The child's mother passed away in May 2018. After the mother's death, the father contacted DHS and requested the child be placed with him. In mid-June, the father sent a letter to the court stating he had an interest in having the child placed in his care and alleging he had been prevented from having contact with the child while in the mother's care, he had been unable to travel to Sioux City during the case due to a "broken down" vehicle, and his efforts to contact the child by phone "have been met with resistance." After the father finally returned the home study paperwork to DHS in late June, DHS sent the father additional forms

---

[2] The only transcript contained in the record on appeal is for the termination hearing. We are required to discern the details of the remaining hearings from the juvenile court orders following those hearings.

[3] The court initially appointed an attorney to serve as counsel and GAL for the child. Prior to the dispositional hearing, the court appointed a court-appointed special advocate to serve as GAL and directed that the original GAL continue to serve as the child's attorney.

to complete due to criminal charges appearing after a background check. That paperwork was not returned to DHS until mid-August

The child's GAL attempted to contact the father in February 2018; the father did not contact her until July. The GAL questioned the father why he had made no effort to establish a relationship with the child. His only answer was that DHS would not let him see her. When asked whether he had made any attempt to contact DHS for visitation, the father responded in the negative. When the GAL showed a picture of the father to the child, the child was unable to identify who it was.

A dispositional-review hearing was held in August, at which the father again agreed to the recommendations contained in the case plan, which included the child remaining in DHS custody for placement in foster care. The plan also noted the father "has had very little contact with [DHS] throughout this case," and "has made virtually no efforts in regards to [the child] or developing a relationship with her." In its dispositional-review order, the court ordered the father to, among other things, participate in visitations with the child in Sioux City and complete and return to DHS any paperwork necessary for the completion of a home study.

A permanency hearing was held in late August. At that hearing, the State and DHS requested the permanency goal be modified to termination of parental rights, citing the father's lack of contact with the child. The child's attorney and GAL agreed. The father requested an additional six months to work toward reunification. The father testified "he now wants to develop a relationship with" the child. He provided a number of reasons as to why he was unable to travel to Sioux City for visits, including homelessness, unreliable transportation, inclement

weather, a suspended driver's license, and impoundment of his vehicle. He generally cited the same reasons for his lack of communication with DHS. Focusing on the father's lack of relationship with the child and failure to engage in services, the court directed the State to initiate termination proceedings. The father cancelled or rescheduled a number of visits with the child between September and December, due to transportation issues. The father finally attended a visit with the child on December 19, their first interaction in more than a year. He also had a telephone interaction with the child in January 2019.

The State filed its termination petition in December 2018. A hearing was held over two days in January and February 2019. At the hearing the father attributed his lack of contact with the child throughout the proceedings to transportation difficulties. He attributed his transportation difficulties to financial issues and scheduling conflicts. However, the record reflects the father's financial difficulties were a result of his decision to not pursue full-time employment and only work minimal hours as an independent contractor. The father acknowledged in his testimony that, had he obtained suitable employment earlier in the case rather than days before the termination hearing, he would have had the ability to visit the child. The father also maintained he requested DHS for visitation with the child to take place in Des Moines but those requests were denied. However, the record shows the father only made such a request at the beginning of the case and then not again until September 2018. During the proceedings, the father had two of his other children, young twins, in his physical care and regular visitation with another of his children, who is in the custody of her mother. No concerns were raised relative to the father's ability to properly care for his other children.

The child has been in the same foster home since September 2017, is integrated into that home, and is bonded to her foster parents, who have stated their interest in being the child's "forever family." The child refers to her foster parents as mom and dad.

The juvenile court ultimately terminated the father's rights under Iowa Code section 232.116(1)(b), (e), and (f) (2018). As noted, the father appeals.

## II.     Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III.     Analysis

First, the father maintains the State failed to make reasonable efforts to facilitate reunification. His position seems to be that, due to his financial difficulties and resulting inability to travel from Des Moines to Sioux City for visitations, the State and DHS were required to facilitate visitations in Des Moines as a reasonable effort toward reunification. Upon our review of the record, we agree with the State that the father's reasonable-efforts challenge is not preserved for our review. It is true that "DHS is to provide 'every reasonable effort to return the child the child's home as quickly as possible consistent with the best interests of the child.'" *L.T.*, 924 N.W.2d at 528 (quoting Iowa Code § 232.102(7)). However, while DHS "has an obligation to make reasonable efforts toward reunification, . . . a parent has an equal obligation to demand other, different, or additional services prior to a

permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

In this case, the father filed a motion for visitation in Sioux City early in the proceedings, the court placed visitation within the discretion of DHS and the child's counsel, and DHS provided the father with opportunities for visitation. While the father noted in a June 2018 letter to the court that he had not "had the ability to drive to Sioux City with [his] vehicle being broken down," there is nothing in the record to indicate the father, prior to the permanency hearing, lodged any objection with the court concerning the adequacy or location of visitation; the challenge was not meaningfully placed before the court until the termination hearing, which is too late. *See id.*; *see also In re L.M.*, 904 N.W.2d 835, 840 (Iowa 2017) (concluding, where visitation was placed within discretion of DHS and the GAL, failure to voice objections at subsequent hearings concerning the adequacy of visitation "waives the issue"); *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (noting complaints must be voiced to the juvenile court).

We turn to the sufficiency of the evidence. As noted, the juvenile court terminated the father's rights under Iowa Code section 232.116(1)(b), (e), and (f). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). As to termination under paragraph (e), the father only challenges the State's establishment of the third element, that he has "not maintained significant and meaningful contact with the child during the previous six consecutive months and ha[s] made no reasonable efforts to resume care of the child despite being given the opportunity to do so." Iowa Code

§ 232.116(1)(e)(3). He argues he intended to maintain a place of importance in the child's life and took affirmative steps to do so, but unforeseen hardships—largely financial and transportation issues—together with DHS's alleged failure to provide reasonable efforts, prevented him from doing so.

> "[S]ignificant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent. This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

*Id.*

Regardless of what the father intended, the evidence is clear and convincing that he has not maintained significant and meaningful contact with the child and has made no reasonable effort to resume care of the child despite being given the opportunity to do. The father had one visit with the child in November 2017. He then cancelled the next two visits and did not request one again until around September 2018, after the permanency goal was modified to termination of parental rights. The father then cancelled or did not confirm the next seven visits over the next few months. The father finally attended a visitation in December. This was the first time the father had seen the child in over a year and only the fourth time since the then nearly five-year-old child was roughly six months old. Before the father was aware of the CINA case that led to this termination, he had not seen the child for over two years. While the father blames his failures in developing a relationship with the child during these proceedings on financial difficulties, the father did nothing to rectify his financial situation. The father fully

acknowledged his voluntary underemployment and the fact that obtaining full-time employment would have increased his ability to attend visitation with the child and develop a relationship. Yet the father continued to maintain, as he does on appeal, that he did everything within his power to develop a relationship with the child. We are not persuaded. As the juvenile court pointed out, "He has said all the words, but has not followed through with his actions." While we agree with the father that poverty alone is not a sufficient reason to terminate parental rights, we do not view this case as one in that dimension. In this case, the father voluntary remained underemployed for most of the proceedings rather than rectifying his situation for the purpose of establishing and maintaining a place of importance in his child's life. We conclude the State met its burden for termination under Iowa Code section 232.116(1)(e).

Finally, the father argues termination of his rights is not in the child's best interests. In determining what is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2). While we agree that there are no concerns for the father's ability to care for the child and that siblings should be kept together whenever possible, the father has simply failed to establish a relationship with the child or foster a relationship between the child and her half-siblings. The child is integrated into her foster home, she is thriving, and the foster parents are willing to serve as the child's "forever family" and provide continued stability and permanency. Continued stability and permanency in this home are in this child's best interests. *See id.* § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212,

224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to home with their foster parents, the foster parents were "able to provide for their physical, emotional, and financial needs," and the foster parents were prepared to adopt the children).  On the other hand, the father and his other children are strangers to the child.

We find termination of the father's parental rights to be in the child's best interests.  We affirm the juvenile court order terminating the father's parental rights.

**AFFIRMED.**